**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HAROLD J. MCGURL, JR., | : | Civil No. 1:21-CV-01304 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN OF SCI-FAYETTE, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court are an original habeas corpus petition, pursuant to 28

U.S.C. § 2254, and multiple supplemental petitions filed by Harold J. McGurl, Jr.

("Petitioner"). (Docs. 1, 44, 52, 57.) Also pending is Petitioner's motion for an

extension of time to file another supplement to the petition. (Doc 69.) For the

reasons set forth below, the court will deny the petition for habeas corpus and deny

the pending motion to file an additional supplement.

### BACKGROUND AND PROCEDURAL HISTORY

This history of this petition as well as the underlying criminal charges are

extensive. For the sake of brevity, the court will create a chronological timeline

highlighting only the necessary facts and delve deeper into the facts as the

subsequent analysis requires.

On April 3, 2018, Petitioner was found guilty by a jury of one count of

attempted first-degree murder and recklessly endangering another person and two

counts each of aggravated and simple assault in the Court of Common Pleas of

Schuylkill County. (Doc. 61-2.) The trial court summarized the facts as follows:

> Appellant attacked the victim, Jordan Adams (the "Victim"), in the
> early morning hours of October 8, 2016. The Victim is the brother of
> Shawn Parker[.] Shawn Parker and Brittany Fenstermacher,
> Appellant's ex-girlfriend, were dating at the time of the incident. On
> the day of the attack, Appellant met Fenstermacher in a public park
> where they shared a six-pack of beer. They then went to a bar called
> the Drunken Monkey. While at the bar, Parker called and texted
> Fenstermacher numerous times. As the evening progressed, Appellant
> became more and more belligerent and obnoxious and announced that
> he planned to get into a fight with Parker. Before leaving the Drunken
> Monkey, Krystal Semerod, a bar patron, gave Appellant, at Appellant's
> request, a knife.
>
> After Appellant and Fenstermacher left the Drunken Monkey to walk
> home, Appellant saw the Victim driving the car that Appellant had
> observed Parker and Fenstermacher driving in earlier that day. The
> Victim parked and exited the car not far from where Appellant and
> Fenstermacher were standing. When the Victim turned around, he saw
> Appellant holding a knife above his head. Appellant asked the Victim
> if he was Parker's brother; the Victim answered in the affirmative; and
> Appellant informed the Victim that Appellant was going to "end" the
> Victim.
>
> Appellant proceeded to attack the Victim with the knife, slashing at his
> head, neck, and face. The Victim fought back and Appellant then
> stabbed him in multiple parts of his body, including his tricep, bicep,
> and shoulder.
>
> When the Victim arrived at the emergency room, he was in
> hemorrhagic shock due to blood loss. The Victim received intravenous
> therapy and blood transfusions and doctors performed emergency
> surgery on him. The Victim survived, but continue[d] to have limited
> mobility in his arm.

*Commonwealth v. McGurl*, 217 A.3d 418 (Pa. Super. 2019) (non-precedential

decision at 1–3). The Commonwealth evidence included a knife and a hat. *Id*.

Petitioner was sentenced to an aggregate term of ten to twenty years of incarceration.  (Doc. 61-2.)

Petitioner appealed his sentence, and the sentence was affirmed on May 21, 2019.  (Doc. 61-3; 61-8.)  Petitioner filed a petition for allowance of appeal to the Pennsylvania Supreme Court on June 20, 2019.  (Doc. 61-3.)  The petition for allowance of appeal was denied on October 16, 2019.  (Doc. 61-3; Doc. 61-9.)  The only issue addressed in Petitioner's direct appeal was a claim of insufficient evidence to support the attempted first-degree murder conviction.  (Doc. 61-8.)

Respondent sets forth that on September 8, 2020, Petitioner filed a document titled "application for oral argument motion for extraordinary relief asserting ineffective assistance of counsel based on a conflict of interest and a violation due process."  (Doc. 62, p. 6.)[1]  However, this document was not available for the court's review.  (Doc. 61-10.)  On September 15, 2020, the Schuylkill County Court of Common Pleas entered an order stating that the motion for oral argument was considered a motion for relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), assigned Petitioner PCRA counsel, and directed counsel to file any amendments to Petitioner's pro se petition by October 2, 2020.  (Doc. 61-12, p. 3.)

On September 23, 2020, Petitioner filed a *pro se* PCRA petition again raising claims of due process and ineffective assistance of counsel based on a

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

conflict of interest. (Doc, 61-12, p. 3; Doc. 61-11.) On October 22, 2020, Petitioner filed an addendum to his PCRA petition repeating the insufficient evidence argument, and requesting post-trial DNA testing. (Doc. 61-13.) On December 14, 2020, Petitioner's counsel filed an amended PCRA petition stating only the ineffective assistance of counsel argument. (Doc. 61-14.)

On June 11, 2021, Petitioner's PCRA petition was denied, and all issues raised by Petitioner were found to be without merit. (Docs. 61-19, 61-20.) Petitioner appealed the PCRA denial on July 6, 2021. (Doc. 61-21.) The only issue raised on appeal was the ineffectiveness of trial counsel due to a conflict of interest. (Doc. 61-23.)

While the appeal was pending before Pennsylvania Superior Court, Petitioner filed a second PCRA petition and a motion for a for post-conviction DNA testing ("first motion for post-conviction DNA testing"). (Docs. 61-26, 61-27.) Both the second PCRA petition and first motion for post-conviction DNA testing were denied by the Court of Common Pleas. (Docs. 61-30, 61-31.) Petitioner appealed these denials. On April 4, 2022, the Superior Court affirmed the lower court's denial of Petitioner's first motion for post-conviction DNA testing. (Doc. 61-32.)

On April 27, 2022, the Superior Court denied Petitioner's appeal of his first PCRA petition. (Doc. 61-33.)

4

On June 21, 2022, Petitioner filed a third PCRA petition alleging his due process rights were violated by the refusal to test DNA. (Doc. 61-34.) On August 18, 2022, the third petition was denied. (Doc. 61-35.)

In October of 2022, Petitioner filed a second motion for post-conviction DNA testing. (Doc. 61-37.) This motion was denied on December 19, 2022. (Doc. 61-38.)

On November 14, 2022, Petitioner filed a fourth PCRA petition. (Doc. 61-39.)[2] On January 5, 2023, the PCRA court dismissed the fourth petition as untimely. (Doc. 61-49.) Petitioner appealed the dismissal of both the denial of the second motion for post-conviction DNA testing and the fourth PCRA petition, which was affirmed by the Superior Court on July 27, 2023. (*Id.*)

As for the background of the above-captioned federal case, it began in July of 2021 with Petitioner filing a petition for habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) This petition raised the following three issues: (1) "Post trial DNA testing"; (2) "Conflict of Interest"; and (3) "Self Defense." (*Id.*) After it was determined that state court proceedings were pending, the court ordered the petition stayed. (Doc. 9.) The case was reopened in July of 2022 following a cursory review of the state court docket demonstrating that no appeal was filed in

---

[2] Respondent states that a copy of this document has not been located.

Case No. 869 MDA 2021. (Doc. 19.) On November 1, 2022, the court served Respondent a copy of the petition. (Doc. 29.)

This court again stayed the case after learning of Petitioner's appeal of the denial of his third PCRA petition. (Docs. 39, 43.) At the same time, the court consolidated the above-captioned action and with a second petition that Petitioner had filed in Case No. 1:23-CV-00673. (Doc. 43.) In doing so, the court construed the petition filed in Case No. 1:23-CV-00673 as a supplemental petition in this action. (*Id*.) This supplemental petition raised the following four issues: (1) "Reversable error courts allowed jury to decide guilt without proving my mental state on before or after trial"; (2) "Conflict of interest with trial counsel Debra Smith Schuylkill County Public defender she also perjured herself at PCRA hearing"; (3) "Post trial DNA testing on 3 pieces of evidence collected by PSP"; and (4) "Post Trial DNA testing". (Doc. 44.) On September 19, 2023, the court lifted the stay entered in this action. (Doc. 51.)

Petitioner filed additional supplemental petitions on September 21, 2023 and November 9, 2023. (Docs. 52, 57.) The September 21, 2023 supplemental petition raises the following three issues: (1) the court erred by allowing the jury to deliberate on the charge of attempted homicide because the Commonwealth did not produce sufficient evidence to establish the intent to kill; (2) ineffective assistance of counsel for failing to request DNA testing before and during trial; and (3) DNA

6

testing "to prove assumptions were made which favored the guilty verdict." (Doc. 52.) The November 9, 2023 letter attaches additional documents and again argues ineffective assistance of trial counsel generally. (Doc. 57.) Respondent filed a response to the petition and supplements on December 28, 2023. (Doc. 62.) Petitioner did not file a traverse. However, he did request an extension of time to allow him to file another supplemental petition. (Doc. 69.)

The court will now address the arguments raised in the petition and subsequent supplemental petitions and deny Petitioner's request for additional time to file another supplemental petition.

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced. 28 U.S.C. § 2241(d). Petitioner was convicted and sentenced in Schuylkill County, Pennsylvania, which is located in this district. *See* 28 U.S.C. § 118(b). Therefore, venue in this district is proper.

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414,

146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief in state court criminal prosecutions is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.*  There is also a recognized interest in the finality of convictions that have survived direct review within the state court system.  *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

### EXHAUSTION REQUIREMENT

A federal court may not grant a writ of habeas corpus on a claim brought by an individual in custody pursuant to a state court judgment unless: (1) "the applicant has exhausted the remedies available in the courts of the State;" (2) "there is an absence of available State corrective process;" or (3) "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); *see also Wilkerson v. Sup't Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017).  Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  Thus, when a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts will typically refuse to entertain a petition for writ of habeas corpus.  *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002).  It is the petitioner who bears the burden of establishing the exhaustion requirement has been satisfied.  *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

"[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To satisfy the exhaustion requirement, a petitioner must invoke "one complete

round" of the applicable state's appellate review process, thereby giving the courts of that state "one full opportunity" to resolve any issues relevant to such claims. *Id*. at 845 (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion is considered satisfied). To "fairly present" a claim, the petitioner must present his or her "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

The failure to properly present claims to the state court generally results in a procedural default. *Lines*, 208 F.3d at 150–60. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims "unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default." *McCandless*, 172 F.3d at 260 (*citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

**DISCUSSION**

Respondent identified the issues raised in the petition and supplemental petitions and summarized them to the court as follows:

> (1) Petitioner's constitutional right to due process of law was violated because the Commonwealth failed to conduct DNA testing of the hat and knife that were introduced into evidence at trial as well as another knife that was not used at trial ('the DNA due process claim");
>
> (2) trial counsel was ineffective for failing to request DNA testing of the hat and knives in the state post-trial proceedings ("the trial counsel DNA ineffectiveness claim");
>
> (3) PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness for not seeking DNA testing of the hat and knives ("the PCRA counsel DNA ineffectiveness claim");
>
> (4) trial counsel had a conflict of interest while representing him, which denied him his constitutional right to the effective assistance of counsel ("the trial counsel conflict of interest ineffectiveness claim"); and
>
> (5) the state court proceedings violated his due process rights because he was convicted of attempted first-degree murder without sufficient evidence of an intent to kill ("the *Jackson* claim").

(Doc. 62, p. 29.) Petitioner did not file a traverse or otherwise challenge Respondent's presentation of the issues raised. Therefore, the court will address each issue in turn as identified by Respondent.

### A. The Petition is Timely.

Respondent has conceded the timeliness of the petition.  (Doc. 62, pp. 26–29.)  Therefore, the court need not address the one-year limitation period set forth by 28 U.S.C. § 2254, as amended by the AEDPA.

### B. The Lack of DNA Testing Is Procedurally Defaulted.

Petitioner first raised the issue of post-conviction DNA testing in state court on October 22, 2020 when Petitioner filed an addendum to his *pro se* PCRA: "Post DNA testing is requested by defendant on all evidence due to Magdalberg Confirming the crime scene."  (Doc. 61-13.)  On December 14, 2020, Petitioner's counsel filed an amended PCRA petition rising only the ineffective assistance of trial counsel issue.  (Doc. 61-14.)

Despite PCRA counsel limiting the amended PCRA petition to the ineffective assistance of trial counsel issue, the PCRA court considered all the issues raised by Petitioner.  (Doc. 61-20.)  On June 11, 2021, Petitioner's PCRA petition was denied, and all issues raised by Petitioner were found to be without merit.  (Docs. 61-19, 61-20.)  This analysis included Petitioner's request for post-conviction DNA testing:

> Defendant has further raised a question about DNA.  It is not clear how Defendant believes he would  be entitled to collateral relief on the grounds he has raised.  No DNA evidence was presented at trial. Additionally, both Defendant and Adams testified that Defendant was the party who wielded the knife and that Defendant used the knife against Adams.  Defendant has not indicated how any alleged DNA

12

evidence would establish his actual innocence under circumstances (42
Pa.C.S. 9543.1), or the collateral relief grounds upon which he would
be entitled to relief.  (42 Pa.C.S. 9543.1; 9543(a)).

(Doc. 61-20, p. 20.)

Petitioner appealed the PCRA denial on July 6, 2021.  (Doc. 61-21.)  The
only issue raised on appeal that was previously raised and pursued before the
PCRA court was the ineffectiveness of trial counsel due to a conflict of interest.
(Doc. 61-23, p. 2.)  On April 27, 2022, the Superior Court denied Petitioner's
appeal of his first PCRA petition and only addressed the sole issue raised on appeal
– ineffective assistance to trial counsel due to a conflict of interest.  (Doc. 61-33.)
Therefore, the challenge to the lack of post-conviction DNA testing that was
addressed by the PCRA court in the first PCRA petition was not appealed.  Thus, it
was not fairly presented to the state court in the first PCRA petition.

However, the issue was addressed by both the PCRA court and the Superior
Court on appeal in the second post-conviction motion for DNA testing.
*Commonwealth v. McGurl*, No. 149 MDA 2023 (Sup. Ct. Pa. July 27, 2023); (Doc.
61-46).  In the appellate decision, the Superior Court set forth the requirements for
post-conviction requests for DNA testing pursuant to state law 42 Pa.C.S. §
9543.1.  It then summarized the PCRA court's order addressing the second post-
conviction motion for DNA testing, and found the following:

[W]e agree with the PCRA court that Appellant's October Motion did
not satisfy § 9543.1's requirements.  First, the petition lacked

13

Appellant's consent to provide samples for testing or an acknowledgement regarding the use of any results. Second, we discern no abuse of discretion in the PCRA court's finding that any exculpatory DNA evidence pertaining to the hat and knife would not establish Appellant's actual innocence because neither possession of those items nor Appellant's identity was in dispute at trial. Finally, Appellant's request for DNA testing was not timely where the hat and knife were discovered and available prior to trial, DNA testing technology existed at the time of Appellant's trial, the jury reached its verdict after January 1, 1995, and the trial court did not refuse a request for funds for DNA testing. *See* 42 Pa.C.S. § 9543.1(a)(2). Detecting no error in the PCRA court's conclusions, we affirm the order denying Appellant's October Motion for DNA testing. *See Commonwealth v. Walsh*, 125 A.3d 1248, 1258 (Pa. Super. 2015) (concluding that defendant "failed to satisfy the threshold requirements to obtain DNA testing pursuant to [§] 9543.1(a)(2); he did not present a *prima facie* case of actual innocence pursuant to [§] 9543.1(c)(3); and he failed to make his request for DNA testing in a timely manner pursuant to [§] 9543.1(d)(1)(iii)").

*Id*. at *7.

As set forth above, habeas relief cannot be granted unless:

the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Here, Petitioner has not alleged that the decision was

contrary to, or involved an unreasonable application of, clearly established federal

law. Instead, all of the arguments presented before the state courts were

concerning the Pennsylvania statute on post-conviction DNA testing. Even in his

petitions before this court, Petitioner did not argue that the state court's rulings

concerning his motions for DNA testing resulted in a violation of federal law. Respondent presents Petitioner's argument as the lack of post-conviction DNA testing *as a violation of due process*, but Petitioner does not set forth the due process allegation in his federal petitions.

Further, even if the court were to liberally construe the federal petitions to implicate the Due Process Clause of the Fourteenth Amendment, Petitioner did not raise a constitutional claim before the state courts.  The exhaustion doctrine "requires that habeas petitioners 'fairly present' federal claims to state courts before bringing them into federal court." *Dreher v. Pinchak,* 61 Fed. Appx. 800, 803 (3d Cir.2003) (citing *Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)), *cert. denied,* 540 U.S. 888 (2003); *see Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir. 2001) (citing *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)), *cert. denied,* 534 U.S. 973 (2001).  "It is not sufficient that all the facts necessary to support the federal claim were before the state courts." *Keller,* 251 F.3d at 413 (quoting *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)); *see Dreher,* 61 Fed. Appx. at 803 (citing *Anderson* ).  "[M]ere similarity of claims is insufficient to exhaust." *Keller,* 251 F.3d at 413 (quoting *Duncan,* 513 U.S. at 366); *see Dreher,* 61 Fed. Appx. at 803 (citing *Duncan* ).  Furthermore, a mere "passing reference to a 'fair trial' " is insufficient to put the state court on notice that petitioner is asserting a federal

constitutional claim. *Keller,* 251 F.3d at 415; *Sampson v. Grace,* 2008 WL 687483, at 19 (E.D.Pa. Mar.11, 2008) (citing *Keller*).

"If state courts are to be given the opportunity to correct alleged violations of its prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan,* 513 U.S. at 365–66; *see Dreher,* 61 Fed. Appx. at 803 (citing *Duncan* ). Thus, as the Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan,* 513 U.S. at 365–66; *see Dreher,* 61 Fed. Appx. at 803 (citing *Duncan* ).

Here, Petitioner does not argue that a federal law or constitutionally protected right was violated. Instead, he clearly alleges that he raised the lack of post-conviction DNA testing in the Pennsylvania courts. However, those claims for post-conviction DNA testing were raised under 42 P.S.A. § 9543.1, Pennsylvania's post-conviction DNA testing statute, and the Pennsylvania courts addressed his claims under 42 P.S.A. § 9543.1. Therefore, any implied violation of federal law or constitutional violation based on the lack of post-conviction DNA testing is procedurally defaulted. Petitioner does not raise any of the exceptions to

procedural default in his petition or briefing.  As a result of the procedural default, the issue will not be further addressed by this court.

### C. Ineffective Assistance of Trial Counsel Argument for Failing to Request DNA Testing Is Procedurally Defaulted.

Petitioner initially raised the issue of ineffective assistance of trial counsel for failing to request DNA testing in his fourth PCRA petition.  (Doc. 61-49, p. 3.)  On January 5, 2023, the PCRA court dismissed this petition as an untimely PCRA petition.  (*Id.*)  Petitioner appealed the dismissal to Superior Court.  (*Id.*)  The Superior Court affirmed the dismissal of the issue on July 27, 2023.  (*Id.*, p. 7.)

Therefore, this issue was never fairly presented to the state courts and is procedurally defaulted.  Petitioner has not alleged any exception to the procedural default.  Therefore, this court will not address the issue further.

### D. The Alleged Ineffective Assistance of PCRA Counsel Argument is not Cognizable Under the AEDPA.

While Respondent clearly identifies the claim of ineffective assistance of PCRA counsel in his response to the petition, Doc. 62, pp. 29–30, the court does not see the issue so clearly raised in the petition or the multiple supplemental filings.  To the extent that any of Petitioner's filings can be construed as raising an ineffective assurance of counsel claim against PCRA counsel, the court concludes that this claim cannot be heard in this federal proceeding.

The Supreme Court has made clear that "there is no constitutional right to counsel in state postconviction proceedings" and "a prisoner ordinarily must bear responsibility for all attorney errors during those proceedings" including "counsel's negligent failure to develop the state postconviction record." *Shinn v. Ramirez*, 596 U.S. 366, 383 (2022). Furthermore, the Third Circuit has held that "alleged errors in collateral proceedings . . . are not a proper basis for habeas relief from the original conviction." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004). Therefore, the court finds that any claim for ineffective assistance of counsel is not cognizable in this court.

### E. The Ineffective Assistance of Trial Counsel Argument Based on a Conflict of Interest Cannot Proceed.

Petitioner has raised the issue of ineffective assistance of trial counsel based on a conflict of interest. (Docs. 1, 44, 57.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI. The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process

that the trial cannot be relied on as having produced a just result." *Id.* "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. 466 U.S. at 687. "*Strickland's* first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances[.]'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed

the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland*, 466 U.S. at 687. To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

In addressing Petitioner's specific claims of ineffective assistance of counsel, the Superior Court applied the governing test for ineffective assistance of counsel claims announced by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 537 Pa. 514, 524 (1994), but the Superior Court cited to *Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa. Super. 2018). (Doc. 61-33, p. 5.) ("To do so, a petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not act)

lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted").  The United States Court of Appeals for the Third Circuit has determined that the *Pierce* test conforms to established federal law and is "not contrary to the *Strickland* test."  *Henderson v. DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005) (citing *Werts v. Vaughn*, 228 F.3d 178, 203–04 (3d Cir. 2000)) (recognizing the *Pierce* test as materially identical to the *Strickland* test). Therefore, the Superior Court's applied test is not "contrary to" the test established in *Strickland*.

Nor does the Superior Court's analysis constitute an objectively unreasonable application of federal law.  *See Knowles*, 556 U.S. at 123.  The Superior Court summarized Petitioner's claims as follows:

> Appellant's claim is that Attorney Smith was ineffective for representing Appellant when she previously appeared on behalf of the Commonwealth at his bail hearings.  *See* Appellant's brief at unnumbered 1.  Specifically, Appellant asserts that Attorney Smith "perjured herself" when she testified to having no recollection of Appellant's bail proceedings.  *Id*.  Instead, Appellant asserts that she did have knowledge of the first proceeding.  *Id*.  Since the charges against him were read by the court at that hearing, the Attorney Smith had prior "knowledge of the case" that permeated the proceedings to a degree that he was denied the right to effective assistance of counsel.  *Id*.

(Doc. 61-33, p. 5.)  The Superior Court then summarized the PCRA court's analysis and affirmed its decision:

> The PCRA court disagreed.  *See* PCRA Opinion, 6/11/21, at 14.  In reaching this decision, the PCRA court credited Attorney Smith's testimony that she did not remember the bail proceedings.  *Id*. at 12.

Additionally, counsel's role had been limited and no evidence was elicited at the hearings. Accordingly, the court found that Attorney Smith's prior representation where she "had not presented, reviewed, or utilized any evidence of the criminal episode against [Appellant]" had no bearing on her representation of Appellant at trial. *Id*. at 14. Thus, there was no basis upon which to presume that prejudice resulted. Since Appellant had advanced no argument explaining how he was prejudiced, the court denied the claim. *Id*. We agree.

The PCRA court made its factual findings and credibility determinations, and as the record evidence supports them, they are binding upon us on appeal. *See*, *e.g. Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019). Accordingly, we accept the PCRA court's finding that Attorney Smith did not discover the fact that she had represented the Commonwealth at Appellant's bail hearing until after trial. Moreover, there was no evidence that Attorney Smith viewed the Commonwealth's case file or was involved in trial preparation in her capacity as a prosecutor. As such, we discern no abuse of discretion in the PCRA court's determination that Attorney Smith's prior involvement had no influence on her preparation or presentation of Appellant's case. Since Appellant has failed to show that he was actually prejudiced by trial counsel's prior employment, his sole allegation of error fails.

(*Id*.) The Superior Court's analysis is not unreasonable under the *Strickland* standard. Furthermore, the court notes that Petitioner's habeas petition and supplemental materials fail to establish prejudice. (Docs. 1, 44, 57.) Instead, they merely assert that a conflict existed and that the presence of the conflict is sufficient to establish ineffective assistance of counsel. (*Id*.) This alone is not sufficient under *Strickland*. Therefore, the court will deny the habeas petition based on the conflict of interest argument.

### F. Petitioner's Due Process Argument Based on Insufficient Evidence Will Be Denied.

Petitioner challenges the sufficiency of the evidence: "reversible error committed by the courts for allowing jury to decide my guilt when my mental state was never proven." (Doc. 44, p. 2.) The court also construes his self-defense argument to be akin to his sufficiency of the evidence challenge to the *mens rea* of attempted first degree murder: "By victims own testimony he admitted to being the aggressor. And perjured himself with his original statement." (Doc. 1, p. 8.) This claim that the victim was the aggressor matches the claim raised on direct appeal of the sentence. (Doc. 61-8, p. 3.)

"[T]he Due Process Clause forbids any conviction based on evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt." *Tibbs v. Florida*, 457 U.S. 31, 45 (1982) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).

The sufficiency claim was raised on direct appeal and then appealed to the Superior Court. (Doc. 61-3.) The trial court's Rule 1925(a) opinion provided the following analysis:

> The evidence read in the light most favorable to the Commonwealth, the verdict winner, establishes that [Appellant] was angry with Parker, [Appellant's] ex-girlfriend's new boyfriend with whom the woman lived. [Appellant] drank alcohol with Fenstermacher much of the day and evening while at a park and then at the Drunken Monkey. He became belligerent the more he drank. At one point he took Fenstermacher's phone when Parker called her and told Parker to get

24

out of the home he shared with Fenstermacher or [Appellant] was going to get him out. [Appellant] asked a woman at the bar, Semerod, for one of the pocket knives hanging on her purse because he said he was getting into a fight with someone who had a gun.

Upon seeing the car that Parker and Fenstermacher had been in earlier in the day drive by him after leaving the bar, [Appellant] told Fenstermacher that there was the "M...F..." Moments thereafter, [the Victim] got out of the vehicle, [Appellant] stated that [Appellant] was going to "end" the Victim], raised the knife above his head and swung it down at the Victim's] head and face. [The Victim] backed up but [Appellant] came at him again slashing [The Victim's] face and head with the knife. After kicking and then tripping [Appellant], the men fought[,] with [the Victim] sustaining numerous knife wounds to his body. The hat [the Victim] wore had been sliced through the brim – the location coinciding with [Appellant's] initial knife strikes. The shirt [the Victim] wore was sliced and tattered and stained significantly by blood. [The Victim] suffered life[-]threatening injuries from the incident. Under the circumstances, including [Appellant's] actions and statements [in] the early morning of October 8, 2016, the jury had [a] sufficient basis to find [Appellant] had formed the requisite intent and took a substantial step toward killing [the Victim].

(Doc. 61-8, p. 3.) The Superior Court agreed with the trial court's conclusion that

Petitioner was not entitled to relief, stating:

Following our review of the record, we agree with the trial court that, when viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence presented by the Commonwealth was sufficient for the jury to reasonably conclude that Appellant had the specific intent to commit First-Degree Murder. As demonstrated by his actions, which occurred after he announced that he intended "to end" the Victim, Appellant took substantial steps toward the commission of that offense, which resulted in the Victim's near-fatal blood loss and permanent injury. Accordingly, Appellant is not entitled to relief on this claim.

(*Id.*)

This standard is consistent with the federal standard: evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (noting that the test for sufficiency of the evidence is the same under both Pennsylvania and federal law). Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1).

This court next considers whether the trial court's decision amounted to an "unreasonable application" of *Jackson*. The Supreme Court has further addressed the standard set forth in *Jackson*:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury. . . to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1 (2011). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766 (2010)).

- - -

> [T]he only question under *Jackson* is whether [the state court's] finding
> was so insupportable as to fall below the threshold of bare rationality.
> The state court of last review did not think so, and that determination
> in turn is entitled to considerable deference under AEDPA, 28 U.S.C.
> § 2254(d).

*Coleman v. Johnson*, 566 U.S. 650, 651–56 (2012).

Here, Petitioner asserts that because the victim admitted to being the aggressor, and he acted in self-defense, there was insufficient evidence to demonstrate he had the required intent to support the attempted first-degree murder conviction.  (Doc. 1.)

First-degree murder is homicide committed with an intent to kill 18 Pa. Cons. Stat. § 2502(a).  Intentional killing is "[k]illing by means of . . . willful, deliberate and premeditated killing."  *Id*. § 2502(d).  A "willful, deliberate and premeditated killing" occurs where the actor has manifested the specific intent to end the life of the victim.  *Commonwealth v. Nelson*, 523 A.2d 728, 732 (Pa. 1987).  "The use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill."  *Commonwealth v. Walker*, 656 A.2d 90, 95 (Pa. 1995); *see also Commonwealth v. Randolph*, 873 A.2d 1277, 1281 (Pa. 2005) (evidence that defendant shot victim, who died from a gunshot wound that entered his back and passed through his heart, was sufficient to establish specific intent to kill).

Here, after a thorough review of the record before this court, the undersigned cannot conclude that the Superior Court's decision was contrary to, or an unreasonable application of the *Jackson* standard, or was based on an unreasonable determination of the facts.  Instead, the Superior Court applied the evidence in the case to the elements of attempted first-degree murder, and properly concluded under the Pennsylvania equivalent of the *Jackson* standard that it was sufficient to support Petitioner's conviction.

For the foregoing reasons, the request for federal habeas relief based on insufficient evidence to establish the required intent will be denied.

### G. Petitioner's Motion for an Extension of Time to File a Supplemental Petition Will Be Denied.

On September 23, 2024, the court received and docketed Petitioner's motion for an extension of time to file a supplemental petition.  (Doc. 69.)  At this point in litigation, Petitioner has filed multiple supplemental petitions, which have been responded to by Respondent.  Petitioner has had over three years to present his arguments to the court.  Therefore, the court will deny a further extension of time for another supplemental petition.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. at 327.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will be issued.

## CONCLUSION

For the reasons set forth above, the court will dismiss the petition for writ of habeas corpus and deny Petitioner's motion for an extension of time.

A separate order will be issued.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: May 12, 2025